**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
Kevin Devine and Alain Frix,            :
                                        :
              Plaintiff,              :
                                        :
                                        :   Civ. Action No. 15-8406 (FLW)
v.                                      :
                                        :
LyondellBasell Industries, N.V.;        :
LyondellBasell Industries AF A.S.C.;    :   **OPINION**
Millennium Specialty Chemicals, Inc.    :
LyondellBasell Flavors & Fragrances LLC;:
Millennium Custodial Trust; and         :
Does I through X.                       :
                                        :
              Defendant.              :
_____:

**WOLFSON, District Judge**:

      In this removed action, Plaintiffs Kevin Devine, a New Jersey resident, and Alain Frix, a Belgium national, bring contract-related claims against Defendants LyondellBasell Industries N.V. ("Lyondell N.V.") and LyondellBassell AF A.S.C. ("Lyondell AF") (collectively, the "Lyondell Defendants"),[1] alleging breach of a bonus agreement. Defendants move to dismiss Plaintiffs' claims, pursuant to Fed. R. Civ. P. 12(b)(6), based on statute of limitations grounds. In that regard, Defendants argue that, under the New Jersey choice of law analysis, either Texas law, or, in the alternative, Florida law, governs the parties' contract dispute, and under the laws of those states, that Plaintiffs' claims are time-barred.  In addition, Defendants move to dismiss Lyondell

---

[1] When this Complaint was originally brought in state court, five defendants were named. However, the Lyondell Defendants are the only defendants remaining in this case, because the state court issued a dismissal without prejudice for failure to serve as to the following named defendants: LyondellBasell Flavors and Fragrances LLC, Millennium Specialty Chemicals, Inc. ("MSC"), and Millennium Custodial Trust ("Millennium").

1

AF as a defendant because no allegations have been asserted against it. Plaintiffs oppose the motion, arguing that New Jersey law should apply, and under New Jersey law, their claims are timely. Plaintiffs also move to restore their claims against MSC and Millennium (the "Millennium Entities"), entities that were dismissed for failure to serve in the state action. Defendants oppose that motion. For the following reasons set forth below, Defendants' motion to apply Texas or Florida law is **DENIED**, Defendants' motion to dismiss Lyondell AF is **GRANTED**, and Plaintiffs' motion to restore their claims against the Millennium Entities is **DENIED**. Additionally, Plaintiff Frix is directed to show cause in writing by October 21, 2016, why his claims should not be dismissed on forum non conveniens grounds.

I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs were formerly employed by MSC, which is located in Jacksonville, Florida. Complaint ("Compl.") ¶ 4. Plaintiffs Devine and Frix were respectively domiciled in New Jersey and Belgium, and they both worked out of their residences. Compl. ¶¶ 1-2. MSC was a subsidiary company of Lyondell N.V., which is located in Houston, Texas, and Lyondell N.V. is the successor of Lyondell AF. Compl. ¶¶ 3-4. Lyondell N.V. currently serves as the parent holding company for certain corporations that were direct or indirect subsidiaries of Lyondell AF. Compl. ¶¶ 3-4.

In May of 2009, MSC mailed offer letters to each of the plaintiffs, promising to pay them a specified amount, characterized as a "Success Bonus." The name "LyondellBasell" appears in isolation in the upper right-hand corner of the letter, but the letter references MSC as "the Company" providing the offer. Lindamood Cert., ¶¶ 3-4, Ex 2-3. The letter informed Plaintiffs that MSC had sold its business to Lyondell AF. Lindamood Cert., ¶¶ 3-4, Ex 2-3. In an attempt to retain Plaintiffs as employees until the closing date of the sale, the letters offered a success bonus in the amount of $75,792 for Devine, and €62,676 for Frix. Lindamood Cert., ¶¶ 3-4, Ex 2-3. The success

bonuses could only be obtained, however, if Plaintiffs were "still actively employed on the Closing Date by the Company, [Lyondell AF] or any of its affiliates . . . ." Lindamood Cert., ¶¶ 3-4, Ex 2-3. Indeed, Plaintiffs would forfeit the success bonus, if, "prior to the Closing Date, [either Plaintiffs'] employment with the Company, [Lyondell AF] and any of its affiliates [was] terminated for cause or on account of voluntary resignation or retirement." Lindamood Cert., ¶¶ 3-4, Ex 2-3. Plaintiffs were never consulted about the amount of their respective success bonuses, nor were they ever invited to do so by Defendants. Certification of Kevin Devine (dated June 3, 2016) ("Devine Cert."), ¶¶ 8, 13; Certification of Alain Frix (dated June 6, 2016) ("Frix Cert."), ¶ 4.

According to Plaintiffs, after MSC was sold, they remained employed with MSC, or by a company affiliated with either Lyondell AF or Lyondell N.V. Compl. ¶ 21. Plaintiffs allege that, as a result, they were eligible for the success bonuses, and that the success bonuses became due on December 23, 2010, the day after which the sale took place. Compl. ¶ 23. Plaintiffs further allege that they never received their bonuses. Compl. ¶¶ 26-35. Based on these allegations, Plaintiffs asserted the following causes of actions: 1) breach of contract; 2) tortious interference with contractual relationship; 3) breach of the implied covenant of good faith and fair dealing; and 4) quasi contract/unjust enrichment. Compl. ¶¶ 36-45.

In the instant matter, Defendants move to dismiss Plaintiffs' claims, pursuant to Fed. R. Civ. P. 12(b)(6), on statute of limitations grounds. As a preliminary matter, the parties dispute which state's law governs the agreement. Specifically, Defendants maintain that Texas law applies to the parties' dispute, thereby barring all of Plaintiffs' claims against Defendants, because Texas's four-year statute of limitations has run on their claims. However, in the event that Texas law does not govern, Defendants argue that Florida law, which also has a four-year statute of limitations for

3

all claims other than breach of contract, should apply. Defendants also argue that Lyondell AF should be dismissed, because no causes of action have been asserted against it. In response, Plaintiffs argue that New Jersey's six-year statute of limitations for contract actions should apply. Plaintiffs also move to restore their claims against the Millennium Entities, which were dismissed by the state court on November 20, 2015, for failure to effectuate service. Defendants oppose the motion. After the motions were fully briefed, the Court held a status conference call on March 15, 2016, and determined that New Jersey law does not apply to Frix's claims.

## II. DISCUSSION

### A. New Jersey's Choice of Law Analysis[2]

The Court must apply New Jersey choice of law rules in determining whether Texas, Florida, or New Jersey substantive law governs Plaintiffs' contract-based claims. *See Berg Chilling Systems, Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006). As such, the Court must partake in a two-step analysis. *Spence-Parker v. Del. River & Bay Auth.*, 656 F. Supp. 2d 488, 497, (D.N.J. 2009). At step 1, the Court assesses whether an "actual conflict" between the laws of the potentially interested states pertaining to the dispute at hand exists. *Id*. (citation omitted). If a conflict between the potentially applicable laws does not exist, the Court is presented with a false conflict, and the choice of law "inquiry is over." *Lebegern v. Forman*, 471 F.3d 424, 428 (3d Cir.

---

[2] While Plaintiffs are correct in asserting that the Court should apply New Jersey's choice of law rules, Plaintiffs erroneously argue that the *Erie* doctrine requires a court to apply the substantive law of the state in which it sits. Plaintiffs gravely misconstrue the *Erie* doctrine. The *Erie* doctrine generally provides that a federal court exercising diversity jurisdiction must apply the state's choice of law analysis in which it sits to determine which state's substantive law applies. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). This requirement ensures that the outcome of a case tried in a federal court would be substantially identical to the result of that case, if it were tried in an appropriate state court. In that regard, the purpose of the *Erie* doctrine is to discourage forum shopping.  Plaintiff's assertion that this Court should apply New Jersey substantive law merely because the Court sits in New Jersey would undoubtedly promote forum shopping, which result is antithetic to the intent of the *Erie* doctrine.

4

2006). On the other hand, if there is an actual conflict between the states' laws, the Court moves on to the second step of its analysis. At step 2, the Court must determine "which state has the most meaningful connections with and interests in the transaction and the parties." *NL Industries, Inc. v. Commercial Union Ins. Co.*, 65 F.3d 314, 319 (3d Cir. 1995) (citing *State Farm Mut. Auto. Ins. Co. v. Estate of Simmons*, 84 N.J. 28 (1980)).

      **i.**    **Plaintiff Frix**

As an initial matter, the Court notes that Plaintiffs seek to apply New Jersey law to the claims brought by each of them. Plaintiffs, without support, and illogically, argue that since Devine's claims were lawfully commenced in New Jersey, and "New Jersey [has a] governmental interest in safeguarding the economic interests of its citizens," New Jersey law should also apply to Frix's claims. Plaintiffs Brief in Opposition to Defendants' Motion to Apply Non-New Jersey Law ("Pls' Opposition Brief"), at 21-22. However, Plaintiffs cite no authority to support such a proposition—that a state's interest in protecting its own citizens extends to the claims of a foreign resident who has also brought suit in that state, but who has no connections with the forum state. Indeed, Plaintiffs make no argument as to why Frix, who is a foreign Plaintiff, is connected to New Jersey, aside from the fact that Frix has chosen New Jersey as a forum to bring suit because he seeks to be joined with another employee who is a New Jersey resident. In fact, Frix worked from his Belgium residence while employed with MSC. And, the letter regarding the success bonus, which is the subject of this dispute, was sent to his residence in Belgium, where he received it. In sum, the record indicates that there is no relationship between Frix and New Jersey, so as to justify the application of New Jersey substantive law or even the application of New Jersey's choice of

law analysis as the selected forum.[3] Rather, the lack of Frix's contact with New Jersey raises concerns regarding a separate issue — forum non conveniens — which has not been addressed by either party. That said, it is within this Court's discretion to *sua sponte* raise the issue of forum non conveniens. *See JAK Mktg., LLC v. Anoop Aggarwal*, No. 10-5137, 2011 U.S. Dist. LEXIS 14746, at *2 (D.N.J. Feb. 10, 2011) (raising the issue of forum non conveniens, *sua sponte*, and ordering the plaintiff "to show cause why this case should not be dismissed pursuant to the doctrine of forum non conveniens"); *see also Khan v. Delta Airlines, Inc.*, 2010 U.S. Dist. LEXIS 82293, at *1 (E.D.N.Y. Aug. 11, 2010) (Dismissing the case *sua sponte* on forum non conveniens grounds, after the court "became concerned about using judicial resources to adjudicate a case with seemingly little or no connection with" New York). I note that a dismissal under forum non conveniens may be "warranted where a plaintiff chooses a particular forum, not because it is convenient, but solely in order to harass the defendant or *take advantage of favorable law*."[4] *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 n.15 (U.S. 1981) (emphasis added). Accordingly, Frix is directed to show cause in writing by October 21, 2016, why his claims should not be dismissed on forum non conveniens grounds.

### ii. Plaintiff Devine

On the other hand, because Devine resides in New Jersey, has contacts with New Jersey, and his chosen forum is New Jersey, New Jersey choice of law analysis applies to his claims. In

---

[3] It appears that the only reason why Frix brought his claims in New Jersey is because Frix and Devine share the same legal counsel, who practices in New Jersey.

[4] As noted by the court in *Windt v. Qwest Communs. Int'l, Inc.*, "[w]ith so many American states to choose from, the number of inviting jurisdictions is abundant, and since each applies its own choice-of-law rules, the forum shopping [foreign] plaintiff can find just the right fit." 544 F. Supp. 2d 409, 417 n.10 (D.N.J. 2008). And, litigation in U.S. courts is also attractive to the foreign plaintiff because it is more affordable, as they "have the option of using contingent fees, which are rarely available in foreign jurisdictions." *Id*.

making their choice of law arguments, Defendants first seek to apply Texas law. Defendants argue that, because the present claims accrued in 2009, an application of Texas's statute of limitations would bar all of Plaintiffs' claims. Indeed, a conflict exists between New Jersey and Texas's applicable statute of limitations, as the statute of limitations for Devine's causes of action are different under both laws. Specifically, the statute of limitations in New Jersey for breach of contract, tortious interference with contractual relationship, quasi-contract and unjust enrichment claims are all six years. *See* N.J.S.A. 2A:14-1. Moreover, New Jersey recognizes the cause of action for the breach of the duty of good faith and fair dealing. *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997). In contrast, the statute of limitations in Texas for the aforementioned claims ranges from two to four years, Tex. Civ. Prac. & Rem. §§ 16.003-16.004; *First National Bank of Eagle Pass v. Levine*, 721 S.W. 2d 287, 289 (Tex. 1986), and a cause of action for the breach of the duty of good faith and fair dealing does not exist under Texas law. *Bank One, N.A. v. Stewart*, 967 S.W.2d 419, 441-42 (Tex. App. Houston 14th Dist. 1998). Therefore, an actual conflict of law exists because Plaintiffs' contract-based claims are viable under New Jersey law, but not under Texas law, as they would be time barred.

In light of the conflict, this Court must apply the Restatement's principles in determining whether to apply the law of New Jersey or Texas. In conducting this analysis, the Court looks to the "enumeration of contacts" identified in the Restatement (Second) of Conflicts § 188. *NL Industries, Inc.*, 65 F.3d at 319. Such contacts as related to Devine's contract-based claims include the following: (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. Restatement

(Second) of Conflicts § 188(2). The Court finds that these contacts are either neutral or weigh in favor of applying New Jersey substantive law.

The place of contracting is "the place where occurred the last act necessary, under the forum's rules of offer and acceptance, to give the contract binding effect." Restatement (Second) of Conflicts § 188, Comment e. Similarly, under New Jersey law, "[a] contract is made at the place where the final act necessary for its formation is done." *Spence-Parker,* 656 F. Supp. 2d at 488. Defendants primarily argue that since the offer letters were printed on LyondellBasell letterhead, the "place of contracting was [] in Texas." Defendants' Brief in Support of its Motion to Apply Non-New Jersey Law and Motion to Dismiss (Defs' Brief), at 6-7. The Court disagrees. The offers were sent by Defendants in an attempt to induce Plaintiffs to continue employment with MSC during the time when MSC was contemplating a sale of its business. Indeed, the letters defined MSC as "the Company," and expressed the appreciation of the Company's management "for the important role [Plaintiffs] play[ed] within the Company." The letters further expressed the Company's concern for the "uncertainty" caused to Plaintiffs by its recent decision to sell its business. Lindamood Cert., ¶¶ 3-4, Ex 2-3. As an "an incentive for [Plaintiffs'] continued commitment and contributions to a successful sale of the Business," the letters offered $75,792 and €62,676 ($84,613) to Devine and Frix, respectively. ("Lindamood Cert."), ¶¶ 3-4, Ex 2-3. Plaintiffs, however, could only be eligible for the bonus payments by remaining "actively employed by the Company," or any of its affiliates, throughout a specified period of time. ("Lindamood Cert."), ¶¶ 3-4, Ex 2-3.

Accordingly, those offers served as unilateral contracts. *Giant Eagle, Inc. v. Comm'r*, 822 F.3d 666, 673 (3rd Cir. 2016) ("Unlike bilateral contracts, which are premised on reciprocal promises, unilateral contracts . . . involve only one promise and are formed when one party makes

a promise in exchange for the other party's act or performance.") (citation and quotations omitted); *see e.g.*, *McKelvey v. Spitzer Motor Center, Inc.,* 46 Ohio App. 3d 75, 77 (Ohio Ct. App. 8th Dist. 1988) ("The employer's [bonus program] in consideration of the employee's remaining in the employment and rendering service for a specified time creates a unilateral contract binding upon the employer."); 2 Corbin, Contracts § 6.2 (rev. ed.1995) ("[A] unilateral contract analysis is applicable to the employer's promise to pay a bonus or pension to an employee in case the latter continues to serve for a stated period."). As unilateral contracts, the offer letters did not have a binding effect until a condition precedent was satisfied—that is, Plaintiffs' continued employment at their customary locations. *Giant Eagle, Inc. v. Comm'r*, 822 F.3d 666, 673 (3rd Cir. 2016) ("[A] unilateral contract is not formed and is, thus, unenforceable until such time as the offeree completes performance.") (citation and quotations omitted); *Williston on Contracts*, Fourth Edition, § 38:6 ("[P]arties to a contract are generally free to impose whatever conditions they may choose upon their contractual undertakings, the performance of which is essential before they become bound by the agreement."). For Devine, the place of performance for the contract was in New Jersey, as he worked from home. Devine Cert., ¶ 5. Therefore, the place of contracting weighs in favor of applying New Jersey law. In the same vein, since Devine certifies that "nothing I did to qualify for the success bonus required me to leave New Jersey, the place of performance also weighs in favor of applying New Jersey law. Devine Cert., ¶ 12.

"The place where the parties negotiate and agree on the terms of their contract" is the next consideration. Restat 2d of Conflict of Laws, § 188 (2nd 1988). Defendants contend that the offer was "negotiated" in Texas because "the success bonus agreements were drafted in Houston, Texas, through a collaboration of several departments located in Houston," and that "both of the Success Bonus letters were approved in Houston before they were sent to Devine and Frix." Defs' Brief,

9

at 7. Nonetheless, these deliberations, which Defendants solely rely on, fall short of establishing that the contract was "negotiated" in Texas, because they merely consist of unilateral, internal decisions. *See Frank Briscoe Co. v. Travelers Indem. Co.*, 899 F. Supp. 1304, 1321 (D.N.J. 1995) (stating that a negotiation involves the participation of *multiple* parties who are seeking to reach an agreement) (emphasis added). Furthermore, the success bonuses were not a product of any negotiations between Plaintiffs and their employers. There is no dispute that Devine was never consulted, or invited to consult, about the amount contained within his success bonuses, or any other aspect relating to the success bonus. Devine Cert., ¶¶ 8, 13 ("At no time was I invited to discuss the letter or negotiate its terms before or after I received it . . . I was most certainly not a party to any such deliberations as may have been held."). Such one-sided deliberations on Defendants' part—which eventually led to the offers of the success bonuses—do not amount to negotiations by the parties. Accordingly, this contact is neutral.

Next, the Court considers the location of the subject matter of the contract. Defendants maintain that such location "is Houston, Texas, because as a contract relating to a 'Success Bonus' for sale of the company, the decision whether and when to sell the company would have been made at company headquarters in Houston, Texas." Defs' Brief, at 8. The Court disagrees. The subject matter of the contract primarily concerns Plaintiffs' continued employment with MSC and its affiliates. Indeed, the letter's opening paragraph reads:

> "The management of Millennium Specialty Chemicals, Inc. (the "Company") appreciates the *important role you play within the Company.* We also recognize the uncertainty that the Company's recent decision to sell its flavors and fragrances business (the "Business") may create for you. As an *incentive for your continued commitment and contributions* to a successful sale of the business, you have been selected to be eligible to receive [a bonus], subject to the terms and conditions described in this letter agreement (the "Agreement")."

Lindamood Cert., ¶¶ 3-4, Ex 2-3 (emphasis added). The letter's cardinal term, which is located in a paragraph labeled "eligibility," indicates that Plaintiffs could only qualify for the success bonuses by maintaining their employment with MSC, or any of its affiliates, up to the closing date of the sale. Lindamood Cert., ¶¶ 3-4, Ex 2-3 (emphasis added). In fact, Plaintiffs would have forfeited their right to receive a bonus had they left their employment prior to the time MSC sold its business. The letter then ends by thanking Plaintiffs for their past contributions to the Company, and indicates that MSC continues to count on their dedication and commitment. Lindamood Cert., ¶¶ 3-4, Ex 2-3. As a whole, the letter was intended to serve as an inducement to continue employment on the part of Plaintiffs. As previously mentioned, continued employment, for Devine, occurred in New Jersey. Devine Cert., ¶ 5. Therefore, this factor also weighs in favor of applying New Jersey law.

Lastly, the Court must consider the "[d]omicile, residence, nationality, place of incorporation, and place of business of the parties." Restat 2d of Conflict of Laws, § 188 (2nd 1988). Defendants argue that Texas law should apply as Lyondell N.V. is located in Houston, Texas, and that Defendant Lyondell AF—which no longer exists—was served in Houston, Texas. Defs' Brief, at 9. However, Defendants' place of incorporation is balanced against Devine's domicile in New Jersey, and the fact that he worked from his home residence in New Jersey. Compl. ¶¶ 1-2. Therefore, this contact is, at best, neutral.

Accordingly, the Court finds that the Restatement's enumeration of contacts weigh in favor of applying New Jersey law.[5]

---

[5] Defendants alternatively argue that Florida law should govern the parties' dispute. However, although MSC is headquartered in Jacksonville, Florida, this argument is unconvincing, because New Jersey's connections with, and interests in, the current matter are certainly greater than those of Florida. Indeed, considering Florida's limited relationship to the parties' dispute does not change the fact that the place of contracting and performance occurred in New Jersey, and that

11

### iv. Defendant Lyondell AF

Defendants argue that Lyondell AF should be dismissed from this case, because no causes of actions are asserted against it. Defendant's Reply to Plaintiffs' Opposition, at 2. Plaintiffs do not dispute this assertion, and a review of the Complaint reveals that no claims are indeed asserted against Lyondell AF. Accordingly, Lyondell AF is dismissed from this action. *See e.g.*, *Bell v. Brigantine Mun. Court*, No. 07-1587, 2008 U.S. Dist. LEXIS 6657, at *4 (D.N.J. Jan. 29, 2008) ("Because Plaintiff's Complaint fails to make any allegations against Defendant Merline, this Court finds that Plaintiff fails to state a claim upon which relief may be granted.").

### B. Plaintiffs' Motion to Restore Claims

Without addressing the standard under Rule 60(b), Plaintiffs move to restore their claims, pursuant to Fed. R. Civ. P. 60(a), against the Millennium Entities, which were dismissed without prejudice by the Somerset County Superior Court on November 20, 2015 for "lack of prosecution." Certification of Noel C. Crowley (dated June 3, 2016) ("Crowley Cert."), ¶ 2, Ex. A. Under the "mistake" prong of Rule 60(a), Plaintiffs contend that the dismissal "would surely not have been entered if the [state] court had known that [the Millennium Entities] were served [on November 19, 2015,] the day before the dismissal was entered."[6] Reply Brief in Support of Plaintiffs' Motion to Restore Their Claims (Pls' Reply Brief), at 4. Defendants argue that a motion to reinstate claims

---

the subject matter of the contract also weighs in favor of New Jersey. Accordingly, the Restatement's enumeration of contacts would still weigh in favor of applying New Jersey law, as opposed to Florida law, to Devine's claims.

[6] The Court will not speculate as to what the state court would have done, had it known that service was effectuated upon the Millennium Entities on November 19, 2015, a day before the state court dismissed the claims against the Millennium Entities. Indeed, even with this knowledge, the state court could have dismissed such claims for lack of prosecution or service. *See* Rule 1:13-7. Therefore, the reinstatement of Plaintiffs' claims pursuant to Fed. R. Civ. P. 60(a), which permits the Court [to] correct a clerical mistake or a mistake arising from oversight or omission," is inappropriate. Rather, the application of Rule 60(b) is proper.

must be "evaluated pursuant to Federal Rule of Civil Procedure 60(b)," and that an application of its factors weighs against reinstatement. Defendants' Brief in Opposition to Plaintiffs' Motion to Restore Claims (Defs' Opposition Brief), at 3. The Court agrees.

"Fed. R. Civ. P. 60(b)(1) grants a district court discretion to relieve a party from a final judgment or order in instances of 'mistake, inadvertence, surprise, or excusable neglect.'" *Murray v. Walgreen Co.*, 470 Fed. Appx. 97, 98 (3d Cir. 2012). "In determining whether a party who has missed a deadline is entitled to relief from dismissal because of 'excusable neglect,' a court must look at the totality of the circumstances." *Eun Hee Choi v. Kim*, 258 Fed. Appx. 413, 415, 6 (3d Cir. 2007) (citing *George Harms Construction Co., Inc. v. Chao*, 371 F.3d 156, 163 (3d Cir. 2004)). More specifically, such a determination includes an analysis of the following factors: "(1) prejudice to the adverse party; (2) length of the delay and its potential impact on the judicial proceedings; (3) reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." *Id*. (citing *In re Cendant Corp. Prides Litig.*, 311 F.3d 298, 300 (3d Cir. 2002). However, a court should not give dispositive weight to any of these factors, in conducting its analysis. *Sexton v. Rizzetta*, No. 15-3181, 2015 U.S. Dist. LEXIS 98099, at *3 (D.N.J. July 28, 2015) (citation omitted).

The consideration of the first factor does not weigh against reinstatement. Defendants maintain that the reinstatement of Plaintiffs' claims would require Defendants to "essentially 're-do' dispositive motion briefing [and] result in substantial, unnecessary, and fruitless expense." Defs' Opposition Brief at 4. However, Defendants' explanation is not adequate, because the prejudice under this factor focuses on the prejudice to the Millennium Entities, not to the Lyondell Defendants. If the claims were reinstated, the Millennium Entities may file their own dispositive motion for the first time. Furthermore, reinstatement will not prejudice Defendants here, as this

13

action was recently transferred here, and is still in its earliest stages. Therefore, the factor of prejudice weighs in favor of reinstatement.

However, the remainder of the factors weigh against the reinstatement of Plaintiffs' claims. For one, Plaintiffs' delay in serving the Millennium Entities was substantial. Plaintiffs effectuated service upon the companies 202 days after the initiation of this suit, in violation of Rule 1:13-7. Indeed, under Rule 1:13-7, Plaintiffs had 120 days, or until August 29, 2015, to effectuate service. However, the Millennium Entities were untimely served with a summons and complaint on November 19, 2015—82 days past the applicable deadline. While service was ultimately effectuated upon the Millennium Entities, Plaintiffs disregarded court rules by failing to ask the state court for an extension of time for service, or to accept late service. This factor, therefore, weighs against the reinstatement of Plaintiffs' claims.

Finally, Plaintiffs have not provided the Court with (1) an adequate reason for their noncompliance with the service rules, (2) and any facts demonstrating that they acted in good faith. Rather, Plaintiffs' counsel solely argues that a personal matter kept him from noticing the state court's notice of dismissal, which was filed six months prior to the filing of Plaintiffs' motion to restore their claims. However, Plaintiff does not argue that his personal matter was a basis for his delay in serving the Millennium Entities, or the reason why he did not seek an extension of time to serve. Crowley Cert., ¶ 5. *Fisco v. Lamplight Farms, Inc.*, No. 11-3855, 2013 U.S. Dist. LEXIS 170802, at *4 (D.N.J. Dec. 4, 2013) ("Leaving aside questions as to the efficacy of 'service', Plaintiff offers no excuse for the extraordinary delay in delivering copies of her Complaint to Defendants."). For example, Plaintiffs' counsel does not indicate whether it was difficult to ascertain the whereabouts of the agents upon which service could be made on behalf of the Millennium Entities. Nor do Plaintiffs indicate that they acted diligently by attempting to

14

effectuate service upon the Millennium Entities, albeit unsuccessfully, prior to their August 29, 2015 deadline. Hence, the Court cannot determine if Plaintiffs were at fault for the delay in service, and the Court has no basis to find that Plaintiffs' counsel acted in good faith, since he failed to make an argument in that regard.

Accordingly, based on an application of Rule 60(b)'s factors, in light of the record presented, the Court cannot conclude that Plaintiffs' actions constitute "excusable neglect." Therefore, the Court will decline to exercise its discretion to reinstate Plaintiffs' claims against the Millennium Entities.[7]

---

[7] I note that MSC has ceased its operations following the sale of its business, a fact to which even Plaintiffs admit in multiple filings. Plaintiffs' Complaint, at ¶ 4 ("On information and belief, MSC has ceased operations and may no longer be subject to suit."); Crowley Cert., at ¶ 3 ("I understand that MSC had at that time ceased operations following the sale of its business."). Furthermore, a review of Plaintiffs' complaint reveals that four causes of actions have been asserted, yet none are against Millennium. Plaintiffs' Complaint, at ¶¶ 26-45. Accordingly, based on the merits, it appears that Plaintiffs would have failed to state any claims against the Millennium Entities.

### III.   CONCLUSION

For the foregoing reasons, Defendants' motion to apply Texas or Florida law is denied; however, Defendants' motion to dismiss defendant Lyondell AF is granted; that dismissal is without prejudice.  Plaintiffs' motion to restore their claims against the Millennium Entities is denied.  In addition, Plaintiff Frix is directed to show cause in writing by October 21, 2016, why his claims should not be dismissed on forum non conveniens grounds.

Dated: October 12, 2016

/s/ Freda L. Wolfson
Freda L. Wolfson
United States District Judge